# MARY ORR

v.

## MAGDALENA JASON, Adm'x, etc.

1. EVIDENCE—PROMPTNESS IN PAYMENT OF DEBTS.—In a suit for the payment of an alleged debt, evidence that a party was prompt in the payment of his debts is admissible. It is always allowable to show the necessity of the creditor, and the ability of the debtor as circumstances tending to show payment, and promptness in payment is as proper to be shown as ability.

2. ADMISSION OF EVIDENCE RELATIVE TO OTHER PROCEEDINGS IN COURT.—Under the circumstances of this case, it was not error to admit evidence of proceedings to probate a will wherein the subject matter in this suit was in question, it being a circumstance tending to shed light upon the intention of appellant and of the deceased, as to whether there was a liquidation of the claim at $3,000, and a promise to pay.

3. OBJECTION TO QUESTION AS BEING TOO GENERAL.—The general question "just state what the arrangement between you and your father was," is too broad, as an answer, if permitted, would have allowed the witness to have testified fully in relation to conversations or transactions about which the other interested witness had not spoken. It was the duty of counsel to have called the attention of the witness to the particular transaction or conversation mentioned by such other interested witness.

4. INSTRUCTIONS.—MODIFICATIONS BY THE COURT.—A modification by the court of an instruction which has the effect to mislead the jury, is a substantial error for which the cause will be reversed.

APPEAL from the Circuit Court of Marshall county; the Hon. JOHN BURNS, Judge, presiding.

Messrs. BARNES & MUIR, for appellant; contending that the court erred in admitting testimony relative to the general character of the deceased as a person who paid his debts promptly, cited Phillips on Ev. 563; 1 Greenl'f Ev. § 52; Crose v. Rutledge, 81 Ill. 266; Phillips on Ev. 624.

That it was error to instruct that the plaintiff must prove his case by a clear preponderance of evidence: Crabtree v. Reed, 50 Ill. 206.

The law in civil cases requires only a preponderance of evidence: Miller v. Balthasser, 78 Ill. 302; Miller v. Miller, 16 Ill. 296; Freeman et al. v. Freeman, 65 Ill. 106.

Declarations and admissions of parties, when deliberately made, in view of all the facts to which they relate, are of the most satisfactory character as evidence, and it is error for the court to instruct that such evidence should be received with great caution and allowance: Frizzell v. Cole, 29 Ill. 465; Straubher et al. v. Mohler, 80 Ill. 21; Rafferty v. The People, 72 Il. 37.

Instructions should not be given upon any theory not supported by the evidence: Badger. v. Paper Mf'g Co. et al. 70 Ill. 302.

That the law under certain circumstances implies a contract to pay for services rendered by a child : Freeman et al. v. Freeman, 63 Ill. 106; Miller v. Miller, 16 Ill. 296; McRea v. McRea, 3 Brad. (N. Y.) 199.

The eighth instruction given for appellee was wrong, as it gives too much prominence to the circumstances favorable to appellee, and makes no mention of facts supporting appellant's view of the case: Hewitt v. Johnson, 72 Ill. 513; Homes v. Hale, 71 Ill. 552; Hatch et al. v. Marsh, 71 Ill. 370; C. B. & R. R. Co. v. Griffin, 68 Ill. 499.

Upon the question of when the Statute of Limitation begins to run in such cases: Rev. Stat. 1874 676; Freeman et al. v. Freeman, 65 Ill. 106; Thompson v. Reid, adm'r, 48 Ill. 118.

Messrs. BANGS, SHAW & EDWARDS, for appellee; argued that evidence that a party was prompt in payment of his debts, is admissible as tending to raise a presumption of payment of the claim in suit; and cited 3 Phillips on Ev. 505; Ross v. Darby, 4 Munf. 428.

That the plaintiff should make out a case by a clear preponderance of testimony: Candor's Appeal, 5 Watts v. Serg., 513; Mostelle's Appeal, 30 Pa. St. 473; Leidig v. Coover's Ex'rs, 2 Wright, 534; Davis v. Goodenow, 1 Vt. 715; Parker v. Johnson, 25 Ga. 576; Peak v. The People, 76 Ill. 289; Long v. Hitchcock, 9 C. &. P. 619; Lanz v. Frey et ux. 19 Penn. 369; 1 Starkie on Ev. 543.

It was proper for the jury to know that expectation of compensation by will would not take the place of an understanding

Orr v. Jason.

between appellant and her father that she was working for hire: Willie v. Dunn, Wright, 134; Lee v. Lee, 6 Gil. & Johns. 316.

LELAND, P. J.  This was an action by Mary Orr, the wife of William T. Orr, against her mother, Magdalena Jason, as administratrix of the estate of her father, John Jason.

The suit was brought by appellant to recover $3,000, claimed to have been an amount agreed upon and fixed as compensation for some twelve and a half years' labor by appellant for her father in his lifetime, after she became of age. The defense was that she continued with her father after she became of age as before, and that the relation of debtor and creditor never existed. There was also a plea that the cause of action did not accrue within five years next preceding the commencement of the suit: (This should have been five years next preceding the death, etc. See Sec. 19, p. 676, Rev. Stat., 1874.) Replications: first, that they did accrue, etc., and second, a promise by deceased within the five years, etc. Trial and verdict for the defendant.

Jason, the deceased, was a Dane, and there was evidence tending to show that the appellant during the twelve and a half years performed the ordinary farm labor usually done by men. It was contended by appellant, with evidence tending to show it, that it was constant, and by appellee, supported by evidence to that effect, that it was occasional only, and that it was not unusual for females similarly situated, of Danish descent, to do such work occasionally.

There was evidence tending to show that appellant's father during his last illness, said to her in the presence of witnesses whom he desired to pay particular attention, "Mary, I want you to have $3,000 to pay you for your work out of my property, and then come in equal shares with the rest."

There was also evidence that an attempt had been made to prove this up as a nuncupative will, and that the question whether it was a will or not was then pending in the Circuit Court on appeal from a determination of the County Court that it was not a will. There was evidence to the effect that

the father was very low, and near his end when the statement was said to have been made. It was also contended by appellant, and there was evidence tending to show it, that her father a day or two after this gave her $750 for her trouble nursing him during his sickness, and that it was not to be part payment of the $3,000, but a gift or gratutity in addition thereto. '

This is a sufficient statement of the controversy for the purposes of this opinion. We do not propose to say anything as to the weight of the evidence, as the case must be passed upon by another jury, but we will confine ourselves to the rulings of the Court below, which we deem erroneous.

The first error assigned to which our attention is directed, is that witnesses for appellee were allowed to state that the deceased was prompt in the payment of debts. We see no objection to this. It is always allowable to show the necessity of the creditor and the ability of the debtor as circumstances tending to show payment, and there was evidence in the case tending to show that the father had paid Mary for her labor. We see no reason why promptness is not as proper to be shown as ability. The authorities cited by appellee we think in point.

The only objection to the introduction of the supposed will is that the jury might fear that if the plaintiff got a verdict she might also claim the same amount again under the will; that it was irrelevant, etc. We hardly think that the jury would consider that the payment of the amount as a debt would not amount to a payment of the legacy. We are disposed to think that the introduction of the will and the proceedings to probate it, if such proceedings were with the consent of appellant, and we think there is evidence tending to show that she did consent thereto, was proper in determining whether the $3,000 were in the nature of a gratuity or bequest of that amount as her share out of the estate, instead of in addition to it. The mother testifies that the deceased said that he intended that Mary should have $3,000, if she (the mother) was willing, in either money or property, but that he did not say that she should have that and then come in equal shares with the rest. Considering the amount of the estate of the deceased, and that there were other children, this would seem full as just as that appellant should

have $3,000, and not treat the $750 as a payment to that extent, but have it added to it, and then divide equally with the rest.    As a circumstance shedding light upon the intention of appellant and of the deceased, as to whether there was a liquidation at $3,000 and a promise to pay it, we see no objection to this evidence.    If there was actually a promise to pay $3,000 as a sum agreed upon and liquidated between the parties, it would not make it any the less a promise, that the deceased made a will, that the debt so promised should be paid.    If the paper was not a will, but a promise merely, then appellant might have asked the Court to instruct to that effect for her.

We think the general question to appellant, " Just state what the arrangement between you and your father was ?" was too broad, as an answer to it, if permitted, would have allowed the appellant to have testified fully in relation to conversations or transactions about which the other interested witnesses had not spoken.

It was the duty of counsel to have called the attention of the witness to the particular transaction or conversation mentioned by such other interested witnesses.

We think that she might have been asked whether it was true as stated by the witness that she was to have a dollar a day when she worked in the field, and nothing when she worked in the house ?    Whether it was true or not, that her father treated her the same after as before she became of age?  Whether it was true or not that her father always paid right up ?  Whether it was true or not that nothing was said as to how much she was to get until John became of age, &c., &c.

We are aware it is rather difficult sometimes to say what a transaction mentioned in the statute is.    In the case of Donlevy v. Montgomery, 66 Ill. 227, it was thought by the Court below that when it was proved that Donlevy admitted a fact, that he might say that he did not make any such admission, and that he knew he did not, because the alleged admitted fact did not exist, but on the contrary it was otherwise, stating what the fact was.    The ruling was considered improper, and that he should only have been permitted to deny that the conversation took place and stop there without stating the real facts,

Orr v. Jason.

as that made him a witness as to the whole controversy, and not as to the conversation. It might plausibly be said that the real " transaction " testified about in this case, was whether the father did liquidate the amount for the work, and promise to pay the $3,000, and that the interested witnesses were testifying to facts and circumstances tending to show that this could not be so. We think each one of the facts and circumstances tending to prove the main thing is the "transaction," about which appellant might speak, and that her attention should have been called to each of these, and not to the conclusion they tended to prove. She was permitted to say, and did say, that her father never paid her for her work; that there was an agreement that he was to pay her; that there was no arrangement by which she was not to get pay for work done in the house; that he never said he did not owe her; that nothing was ever said about settling up, that she never had any controversy about settlement. She also testified fully as to the liquidation and promise to pay $3,000. Indeed, she really did deny everything that the other interested witnesses said on the subject.

So far as the rulings as to the evidence are concerned, we discover no substantial error, but we think some of the instructions are so erroneous as to require a reversal and the submission of the question to another jury. There are errors to which we do not allude, as to some of the instructions. It is not necessary to examine them all critically. We do not consider it objectionable in a case like this that the jury should be instructed that the preponderance of the evidence should be *satisfactory* and the cases cited by appellee sustain the position assumed.

The modification of the 7th instruction asked by appellant was, we think, improper. The instruction as asked read as follows:

" If the jury believe from the evidence that John Jason, during his last sickness, promised to pay the plaintiff $3,000 for services said to have been rendered, and plaintiff assented to said sum, then in law it can make no difference in' its legal effect in this case that at the same time Jason may have or did

call the attention of other parties as witnesses to said promise, and repeated the same, if the evidence shows that he did so, in the form of a will, or request that the same should be paid out of his estate, and that the plaintiff may have taken steps to establish the same as an oral will, as the real question in this case, and on this point, is whether or not the said John Jason did promise to pay the said sum of $3,000 in consideration and as a compensation for the services rendered by her."

This instruction was a clear and accurate statement of the law, and it should have been given unchanged. The Court, however, so changed it as to render it less clear, and also made it inaccurate as a legal proposition by inserting between the words "did so" and "in the," the expression, "*and did not intend to make a devise or bequest*," and also after the words "oral will" this expression, "*and if in fact he did not intend his declaration as a will.*" This was calculated to create the impression with the jury that although there might be a distinct promise to pay the $3,000 for the labor, the plaintiff could not recover if the deceased at the same time intended to direct by said last will and testament that the debt so promised should be paid out of his estate, or in other words, that as there was offered in evidence what purported to be a nuncupative will, if the jury thought it really was a will, then the plaintiff could not recover on the promise to pay the $3,000, though it was clearly proved.

The plaintiff was entitled to the instruction as asked, and if the only effect of the modification was to mislead the jury, it was a substantial error to change it.

The qualification to appellant's 8th instruction should not have been made. The substance of the change was this: The instruction stated among other things that if the deceased said that plaintiff was to have $3,000, and asked plaintiff if she was satisfied, and she said she was, the estate would be liable, etc., the Court added the words, applying them to appellant, "and accepted said promise and agreed to take said sum as payment." The instruction was accurate as asked, and the amendment was calculated to impress the jury with the idea that a mere statement by appellant that she was satisfied was not sufficient; that

is, that she should also have added that she accepted the promise and agreed to take the $3,000 as payment.

The 9th, which was on the subject of the promise to pay the $3,000 and as to whether it was a gratuity, or a promise to take the indebtedness out of the Statute of Limitations, was modified by the Court, by adding these words at the end of it: If you believe from the evidence the deceased owed the plaintiff what he promised to pay, or any part thereof, in such case the. jury should find what is due plaintiff, if anything, from all the evidence as laid down in these instructions. The language is not entirely clear. It seems to us that the idea intended was that though you may believe the promise was for $3,000, you should not find that amount, but should find from all the evidence according to the principles of the instruction taken as a whole, what was due, as though there were no promise to pay $3,000; that is, that the promise to pay $3,000 would only include what was actually due, if less than that in the judgment of the jury from all the evidence before them.

It may perhaps be said that if this qualification was wrong it did no harm on the trial below, if it might on another, because the jury did not find anything for plaintiff, and therefore there was no lessening of the $3,000 to a smaller sum, as they were directed they might do. The instruction was wrong as to the facts in this case, because there never had been, according to the evidence, any adjustment or liquidation of an amount and the promise of $3,000, if made, was both a liquidation and promise to pay for an unliquidated claim for twelve and a half years' work. If it was meant to say $3,000, less payments, if any, it should have been clearly so stated.

Exception is taken by appellant to the giving the first instruction for the appellee, as well as to others.. We will only consider the first, as we deem that it is clearly defective. It would extend this opinion to too great length to examine all the objections to instructions, and state whether they are well or ill founded.

If the objections made are important, appellee's counsel will guard against the errors on another trial.

The first instruction given for appellee is as follows:

"The jury should consider with care and caution any casual conversation, if any, not had in relation to the matter in dispute, and tending to adjust or determine the rights of the parties in relation to the matters under consideration in this case; such conversations as were had, if any, with third persons having nothing to do with fixing or adjusting the rights of the parties as to the matters in controversy."

The criticism of the appellant's counsel as to this instruction being obscure and not sensible, is well enough. To those conversant with the mistakes incident to the hurry of trials in the Circuit Court, it is apparent that the word "not" has been omitted, between the words "and" and "tending." The word may have been in the mind and not placed on paper by the writer, or the writer may have thought the "not" before the word "had" should be applied to the "tending." Jurors, however, would hardly know what was meant. Treating the negative as applicable to the "tending," etc., we think the giving the instruction was clearly erroneous, and so much so as to entitle appellant to a reversal in this cause, although we might imagine a state of the case where there could properly be an affirmance, notwithstanding the giving it. The all-important thing for appellant to establish was whether her father promised to pay her the $3,000 for her services. The evidence as to this consisted in that of those who were present when it was made. They say the father did make the promise, and called upon them as witnesses to remember it. The appellee herself says there was talk by her husband on the subject. She understood him, however, that the $3,000 was to be all appellant was to have out of the estate. The witnesses at whom this instruction was aimed were Philip Martin and Martin Degner. It was their evidence that was to be considered with care and caution. It was their evidence which the Court declared was that of persons listening to casual conversations. It was the declaration of the deceased John Jason to them which the Court actually decided to be casual, instead of leaving it to the jury to determine whether it was so or not. What was this evidence?

Martin says: I heard Jesse Bane ask Jason if he had some

money to loan and if he could let him have some. Jason said he would not, that he owed Mary $3,000 and wanted to pay her. Witness also stated that in another conversation with Jason at another time, on Mr. Orr's farm, Jason, speaking of an adjoining eighty acres, said, Orr ought to buy it. I owe his wife $3,000 and could pay for it.

Degner says he heard the talk with Bane; Bane wanted to borrow money. Jason said he could not let him have it; that he owed Mary $3,000, and wanted to pay it; that she had worked like a man for twelve and a half years; that he owed her $3,000, and must pay her off. He also says that they conversed in German after the others left about Jason's affairs generally, and that Jason repeated the statement about the $3,000. Bane said, it is true, that he did not recollect about the $3,000, and that he thought he would, if such conversation had taken place.

The cases cited by appellant from our own reports, are such as to require us to reverse for the giving the appellee's first instruction. They are in point, and not only binding as authority, but they properly define the duties and powers of judges and jurors.

Frizzell v. Cole, 29 Ill. 465; Rafferty v. The People, etc. 72 Ill. 37; Straubher et al. v. Mohler, 80 Ill. 21.

For the foregoing, and other reasons which might be given, we think the judgment should be reversed, and the cause submitted to another jury.

                              Reversed and remanded.